UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:                                              Case No: 10-07287-3G7

VALERIE H. SHAW

_____ Debtor(s). /

### TRUSTEE'S NOTICE OF INTENT TO SELL
### REAL PROPERTY OF THE ESTATE AT PRIVATE SALE

---

### OPPORTUNITY TO OBJECT AND FOR HEARING

**PURSUANT TO M.D. FLA. L.B.R. 2002-4, THE COURT WILL CONSIDER THIS MATTER WITHOUT FURTHER NOTICE OR HEARING UNLESS A PARTY IN INTEREST FILES AN OBJECTION WITHIN TWENTY-ONE (21) DAYS FROM THE DATE OF SERVICE OF THIS PAPER. IF YOU OBJECT TO THE RELIEF REQUESTED IN THIS PAPER, YOU MUST FILE YOUR OBJECTION WITH THE CLERK OF THE BANKRUPTCY COURT, 300 N. HOGAN STREET, SUITE 3-350, JACKSONVILLE, FL 32202, AND SERVE A COPY ON THE ATTORNEY FOR THE TRUSTEE, GORDON P. JONES, P.O. BOX 600459, JACKSONVILLE, FL 32260-0459. IF YOU FILE AND SERVE AN OBJECTION WITHIN THE TIME PERMITTED, THE COURT WILL SCHEDULE A HEARING AND YOU WILL BE NOTIFIED. IF YOU DO NOT FILE AN OBJECTION WITHIN THE TIME PERMITTED, THE COURT WILL CONSIDER THAT YOU DO NOT OPPOSE THE GRANTING OF THE RELIEF REQUESTED IN THE PAPER, WILL PROCEED TO CONSIDER THE PAPER WITHOUT FURTHER NOTICE OR HEARING, AND MAY GRANT THE RELIEF REQUESTED.**

---

PLEASE TAKE NOTICE that, pursuant to 11 U.S.C §363(b), Federal Rule of Bankruptcy Procedure 6004, and M.D. FLA. L.B.R. 2002-4 and 6004-1, the Trustee will sell at private sale the Estate's interest in the following described real property:

RE#:                180949-1825
Legal description:  52-5109-3S-29E .200 Ocean Cay Unit Two Lot 145
Street address:     3542 Bay Island Circle, Jacksonville Beach, Florida  32250

The sale shall be to Mr. & Mrs. C. Austin, husband and wife. A copy of the Purchase and Sale Agreement, together with the Trustee's Addendum is attached hereto as Exhibit "A' and by reference made a part hereof. The Trustee received this contract offer from the Real Estate Agent employed by the estate. The Real Estate Agent's commission will be paid at closing from the gross proceeds. The debtor(s) listed the value of the property on her schedules at $300,000.00. The net amount to the bankruptcy estate will fluctuate according to the terms on the attached Contract; anticipated proceeds to estate in excess of $10,000, exclusive all closing costs and commissions. Payment shall be made to **Gordon P. Jones, Trustee, and mailed to Post Office Box 600459, Jacksonville, FL 32260-0459.**

The Estate reserves the right, without penalty, to withdraw this offer of sale at any time, and any funds, bids or deposits received by the Trustee prior to the expiration of the twenty-one day objection period shall be held in trust pending completion of the sale. This sale shall not become final until after the expiration of the twenty-one day objection period set forth below, and/or a favorable disposition of any objections to the sale filed as outlined above. The sale requires the consent of the secured lender pursuant to the terms of the Contract. The proceeds of the sale shall become property of the Estate and distributed according to the Bankruptcy Code. The Trustee has considered the tax consequences of the sale and believes that the sale is in the best interest of the estate and recommends it to the creditors. **The property is being sold "as is, where is" with no warranties of any kind, "express, implied, or otherwise."**

Dated: October 18, 2011

Gordon P. Jones
Florida Bar No.: 829439
Post Office Box 600459
Jacksonville, FL 32260-0459
(904) 262-7373
Trustee

A copy of the foregoing was furnished by Gordon P. Jones, Trustee, via U.S. Mail, postage prepaid, this  21  day of October, 2011 or electronically by the Bankruptcy Noticing Center, to Naji Hassan, 7 Star Realty, 9951 Atlantic Blvd., Suite 130, Jacksonville, Fl 32225 and to all creditors and parties in interest on the mailing matrix.



**PURCHASE AND SALE AGREEMENT AND DEPOSIT RECEIPT**
**COPYRIGHTED BY AND SUGGESTED FOR USE BY THE MEMBERS OF**
**THE NORTHEAST FLORIDA ASSOCIATION OF REALTORS®, INC.**



1 _____ Austin  husband  and w fe _____ ("BUYER/PURCHASER")
2 and  Gordon P Jones as Bankruptcy Trustee of the estate of Valerie H  Shaw _____ ("SELLER")
3 which terms may be singular or plural and  nature the successors  personal representatives and assigns of
4 BUYER and SELLER, hereby agree that SELLER will sell and BUYER will buy the following Property with all
5 improvements (Property it upon the following terms and conditions and as completed or marked  In any conflict
6 of terms or conditions  that which is added will  supersede that which is printed or marked
7 **PROPERTY DESCRIPTION**
8 (a) Street address  city  zip code  3647 (Ba),  star J Circle  Jacksonville  Beach, FL 32250 _____
9 (b) Property is located at ___Duval___ County, Florida  Real Property Tax ID No. 180949 1825 _____
10 (c) Legal description of the Real Property  (if lengthy  attach legal description) _____
11 52-51 09-3S-29E  200 OCEAN BAY UNIT TWO LOT 145 _____
12 _____
13 The Property will be conveyed by statutory  general  warranty deed  trustee s  personal representative's or
14 guardian s deed as appropriate to the status of SELLER  unless otherwise required herein), subject to current
15 taxes, existing zoning (unless otherwise specified in paragraph 1  recorded restrictive covenants governing the
16 **Property**, and easements of record  Under Florida law transfer of the BUYER's principal residence requires
17 BUYER and BUYER's spouse to sign the mortgages) Under Florida law the sale of a principal residence
18 requires SELLER's spouse to sign the deed even if the spouse's name is not on SELLER's present deed

| | | |
|---|---|---|
| 19 1. | PURCHASE PRICE to be paid by BUYER is payable as follows | |
| 20 | (A) Binder deposit paid herewith  which will remain a binder until closing | |
| 21 | unless sooner disbursed as provided in the provisions of this Agreement | $ _____ |
| 22 | (B) Binder deposit due within ___ days after date of execution of this | |
| 23 | Agreement  after  her  builder approval  for $60.18 | $        1 000 00 |
| 24 | (C) Additional binder deposit due on or before _____ or | |
| 25 | _____ days after date of acceptance of this Agreement | $ _____ |
| 26 | (D) Balance due at closing (not including BUYER s closing costs  prepaid | |
| 27 | items or prorations) by cashiers  official or certified check or wire transfer | $ _____ |
| 28 | (E) Proceeds of a note and mortgage to be executed by BUYER to any | |
| 29 | lender other than SELLER | $ _____ |
| 30 | (F) Proceeds of a note and mortgage to be executed by BUYER to SELLER | $ _____ |
| 31 | **(G) PURCHASE PRICE** | $        232,500 00 |

32 **Escrow Agent Information** (When the binder deposit(s)  is held by an **attorney or title insurance agency**):
33 Name  All Florida Title _____
34 Address  4417 Beach Blvd  suite 105 _____
35 Phone  904-399-2121 _____ Fax _____
36 E-mai _____

37 2 **FINANCING INFORMATION**  BUYER  intends to finance this  transaction as follows  ( ) cash transaction
38 or with a loan without financing contingency  and therefore is not contingent on financing, or [ ✓ ] with the
39 type of loan marked below with financing contingency
40 (A) **APPLICATION**: Within ___ (five (5)  days  ) (left blank) after date of acceptance of this
41 Agreement, BUYER will make application for mortgage loan(s) and pay lender for credit report(s)
42 BUYER will timely furnish any and all credit  employment  financial  and other information required by
43 lender  BUYER will pay for the appraisal at the earliest  date allowed by law and will request the
44 Lender to order the appraisal without delay  BUYER hereby authorizes BUYER's lender to disclose
45 information regarding the status  progress and conditions of loan application and loan approval to
46 SELLER, SELLER's attorney  Broker(s) to this transaction  and settlement agent

Page 1 of 10                                                               05/10 Letter



**PURCHASE AND SALE AGREEMENT AND DEPOSIT RECEIPT**
**COPYRIGHTED BY AND SUGGESTED FOR USE BY THE MEMBERS OF**
**THE NORTHEAST FLORIDA ASSOCIATION OF REALTORS®, INC.**



REALTOR®                                                         REALTOR®

1 ~~Christopher Benjamin~~ Austin ; husband and wife _____ ("BUYER/PURCHASER"),

2 and Gordon P. Jones as Bankruptcy Trustee of the estate of Valerie H. Shaw _____ ("SELLER"),

3 which terms may be singular or plural and include the successors, personal representatives and assigns of
4 BUYER and SELLER, hereby agree that SELLER will sell and BUYER will buy the following Property with all
5 improvements ("Property"), upon the following terms and conditions and as completed or marked. In any conflict
6 of terms or conditions, that which is added will supersede that which is printed or marked.
7 **PROPERTY DESCRIPTION:**
8 (a) Street address, city, zip code: 3542 Bay Island Circle, Jacksonville Beach, FL 32250

9 (b) Property is located in ____Duval____ County, Florida. Real Property Tax ID No: 180949 1825 _____

10 (c) Legal description of the Real Property (if lengthy , attach legal description): _____

11 52-51.09-3S-29E .200 OCEAN CAY UNIT TWO LOT 145 _____

12 _____

13 The Property will be conveyed by statutory general warranty deed, trustee's, personal representative's or
14 guardian's deed as appropriate to the status of SELLER (unless otherwise required herein), subject to current
15 taxes, existing zoning (unless otherwise specified in paragraph 13), recorded restrictive covenants governing the
16 Property, and easements of record. Under Florida law financing of the BUYER's principal residence requires
17 BUYER and BUYER's spouse to sign the mortgage(s). Under Florida law the sale of a principal residence
18 requires SELLER's spouse to sign the deed even if the spouse's name is not on SELLER's present deed.

19 1.    PURCHASE PRICE to be paid by BUYER is payable as follows:
20      (A) Binder deposit paid herewith, which will remain a binder until closing
21          unless sooner disbursed according to the provisions of this Agreement          $ _____

22      (B) Binder deposit due within __1__ days after date of acceptance of this
23          Agreement *after lien holder approval 2~6/14/14*                               $ ___1,000.00___
24      (C) Additional binder deposit due on or before _____ or
25          _____ days after date of acceptance of this Agreement              $ _____

26      (D) Balance due at closing (not including BUYER's closing costs, prepaid
27          items or prorations) by cashiers, official or certified check or wire transfer  $ _____

28      (E) Proceeds of a note and mortgage to be executed by BUYER to any
29          lender other than SELLER                                                       $ _____

30      (F) Proceeds of a note and mortgage to be executed by BUYER to SELLER              $ _____

31      **(G) PURCHASE PRICE**                                                            $ ___232,500.00___

32      **Escrow Agent Information (When the binder deposit(s) is held by an attorney or title insurance agency):**
33      Name: All Florida Title
34      Address: 4417 Beach Blvd suite 105
35      Phone: 904-399-2121                              Fax: _____
36      E-mail: _____

37 2.    **FINANCING INFORMATION:** BUYER intends to finance this transaction as follows: [  ] cash transaction
38      or with a loan without financing contingency, and therefore not contingent on financing; or [ ✓ ] with the
39      type of loan marked below with financing contingency.
40      (A) **APPLICATION:** Within __5__ days (five (5) days if left blank) after date of acceptance of this
41          Agreement, BUYER will make application for mortgage loan(s) and pay lender for credit report(s).
42          BUYER will timely furnish all credit, employment, financial, and other information required by
43          lender. BUYER will pay for the appraisal at the earliest date allowed by law and will request the
44          Lender to order the appraisal without delay. BUYER hereby authorizes BUYER's lender to disclose
45          information regarding the status, progress and conditions of loan application and loan approval to
46          SELLER, SELLER's attorney, Broker(s) to this transaction, and settlement agent.

Page 1 of 10                                                            05/10 Letter

47  Unless the mortgage loan is approved within _____ days (forty-five (45) days if left blank) after date
48  of acceptance of this Agreement, hereinafter called Loan Approval Period, without contingencies
49  except those pertaining to the Property, BUYER and SELLER shall have five (5) days thereafter to:

50  **(1) Extend the time for loan approval by mutual written agreement; or**

51  **(2) Terminate this Agreement by written notice to the other party.**

52  If BUYER and SELLER do not extend the time for loan approval or terminate this Agreement within
53  said five (5) day period, this Agreement shall no longer be subject to a financing contingency. In this
54  event, neither party shall have a right to terminate this Agreement under this paragraph, the binder
55  deposit shall not be refundable because of BUYER's failure to obtain financing, and this Agreement
56  shall continue through the date of closing. As used in this paragraph, contingencies pertaining to the
57  Property include, but are not limited to, marketable title, wood-destroying organism inspection and
58  survey as required by this Agreement.
59  (B) [   ] FHA: "It is expressly agreed that, notwithstanding any other provisions of this Contract, the
60  PURCHASER shall not be obligated to complete the purchase of the Property described herein or to
61  incur any penalty by forfeiture of earnest money deposits or otherwise unless the PURCHASER has
62  been given in accordance with HUD/FHA or VA requirements a written statement by the Federal
63  Housing Commissioner, Department of Veteran Affairs, or a Direct Endorsement lender setting forth
64  the appraised value of the Property of not less than $ _____. The PURCHASER shall
65  have the privilege and option of proceeding with consummation of this Contract without regard to the
66  amount of the appraised valuation. The appraised valuation is arrived at to determine the maximum
67  mortgage the Department of Housing and Urban Development will insure. HUD does not warrant the
68  value nor the condition of the Property. The PURCHASER should satisfy himself/herself that the price
69  and condition of the Property are acceptable."
70  (C) [   ] VA: It is expressly agreed that, notwithstanding any other provisions of this Agreement, the
71  BUYER shall not incur penalty by forfeiture of earnest money or otherwise be obligated to complete
72  the purchase of the Property described herein, if this Agreement purchase price or cost exceeds the
73  reasonable value of the Property established by the Veterans Administration. The BUYER shall,
74  however, have the privilege and option of proceeding with the consummation of this Agreement
75  without regard to the amount of reasonable value established by the VA.
76  (D) [✓] CONVENTIONAL OR USDA FINANCING: If BUYER's financing is conventional or USDA, it is
77  expressly agreed that, notwithstanding any other provision of this Agreement, BUYER shall not incur
78  penalty by forfeiture of deposit(s) or otherwise be obligated to complete the purchase of the Property
79  described herein if the purchase price exceeds the appraised value of the Property as established by
80  the lender's appraiser. BUYER shall, however, have the option of proceeding with the consummation
81  of this Agreement without regard to the amount of said appraised value. This contingency shall expire
82  five (5) days after expiration of the Loan Approval Period.
83  (E) [   ] OTHER FINANCING: [   ] MORTGAGE ASSUMPTION [   ] SELLER FINANCING. If marked see
84  applicable Addendum attached hereto and made a part of.

85 **3.**  **LOSS OR DAMAGE:** If the Property is damaged by any casualty prior to closing, SELLER shall
86  immediately notify BUYER in writing. If the cost of repair or restoration does not exceed 3% of the
87  purchase price, cost of restoration will be an obligation of SELLER and closing will proceed pursuant to
88  the terms of this Agreement. If the cost of repair or restoration exceeds 3% of the purchase price, BUYER
89  may terminate this Agreement by giving written notice to SELLER within ten (10) days after BUYER's
90  receipt of written notice from SELLER of the casualty. If BUYER has not so terminated, SELLER shall
91  have thirty (30) days from the end of said ten (10) day period to complete the repairs in accordance with
92  the conditions required by paragraph 15 and all applicable laws. Closing shall occur within twenty (20)
93  days thereafter but not sooner than the date of closing as set forth in paragraph 10.
94  If BUYER has not terminated as above and the cost of repair or restoration exceeds said 3% and SELLER
95  declines to pay the excess, then SELLER must notify BUYER in writing of same within fifteen (15) days
96  after the casualty. In this event, BUYER may either purchase the Property as is, together with any
97  insurance proceeds payable by virtue of such casualty (to be assigned by SELLER to BUYER upon
98  closing) plus an amount equal to SELLER's deductible, or BUYER may terminate this Agreement. BUYER
99  shall have five (5) days after receipt of SELLER's written notice of refusal to pay the excess costs, to
100  terminate this Agreement, or be deemed to have elected to proceed with this transaction.

101 **4.**  **PRORATIONS:** All taxes, rentals, condominium and homeowners' association fees, solid waste
102  collection/disposal fees, stormwater fees, and Community Development District (CDD) fees will be
103  prorated through day before closing based on the most recent information available to the closing

05/10 Letter

| | |
|---|---|
| 104 | attorney/settlement agent using the gross tax amount for tax prorations. The day of closing shall belong to |
| 105 | BUYER. Any proration based on an estimate shall be reprorated at the request of either party upon |
| 106 | receipt of the actual bill based on the maximum discount available. |
| 107 | **PROPERTY TAX DISCLOSURE SUMMARY:** BUYER SHOULD NOT RELY UPON SELLER'S |
| 108 | CURRENT PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT THE BUYER MAY BE |
| 109 | OBLIGATED TO PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR |
| 110 | PROPERTY IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD |
| 111 | RESULT IN HIGHER PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING |
| 112 | VALUATION, CONTACT THE COUNTY PROPERTY APPRAISER'S OFFICE FOR INFORMATION. |

113 5.    **BUYER WILL PAY:**
114    (A) CLOSING COSTS:

| | |
|---|---|
| 115  [✓] Recording fees | [ ] Closing attorney/settlement fee |
| 116  [✓] Intangible tax | [✓] BUYER's courier fees |
| 117  [✓] Note stamps | [✓] Mortgage origination charges |
| 118  [✓] Simultaneous mortgagee title insurance policy | [✓] Mortgage insurance premium |
| 119  [✓] Title insurance endorsements | [ ] Mortgage discount not to exceed_____ |
| 120  [✓] Wood-destroying organism report | [✓] Lender's administrative fee |
| 121  [✓] Appraisal fee | [✓] Lender's flood certification fees |
| 122  [✓] Credit report (s) | [ ] Mortgage transfer and assumption charges |
| 123  [✓] Tax service fee | [ ] Title search |
| 124  [✓] Inspection fee(s) | [ ] VA funding fee |
| 125  [ ] Real estate brokerage fee _____ | [ ] One year home warranty _____ |
| 126  [✓] Survey | |
| 127  [ ] Other _____ | |

| | |
|---|---|
| 128 | (B) All other charges required by BUYER's lender(s) in connection with the BUYER's loan(s), unless |
| 129 | prohibited by law or regulation. |
| 130 | (C) Condominium and homeowners' association transfer and statement fees and capital contributions if |
| 131 | applicable. |
| 132 | (D) PREPAIDS: Prepaid hazard, flood and wind insurance, taxes, interest and mortgage insurance |
| 133 | premiums required by the lender. |

134 6.    **SELLER WILL PAY:**
135    (A) CLOSING COSTS:

| | |
|---|---|
| 136  [✓] Deed stamps | [ ] One year home warranty _____ |
| 137  [✓] Owner's title insurance policy | [ ] Title insurance endorsements |
| 138  [✓] Title search | [ ] Lender's flood certification fees |
| 139  [✓] Closing attorney/Settlement fee | [ ] Mortgage discount not to exceed_____ |
| 140  [✓] Real estate brokerage fee | [ ] Appraisal fee |
| 141  [ ] Survey | [ ] Tax service fee |
| 142  [✓] Satisfaction of mortgage and recording fee | [ ] Lender's administrative fee |
| 143  [✓] SELLER's courier fees | |
| 144  [ ] Repairs and replacements, in addition to those in paragraph 15(H), not to exceed $_____ | |
| 145  [ ] Wood-destroying organism report (Seller must pay if VA) | |
| 146  [ ] Other _____ . | |

| | |
|---|---|
| 147 | (B) All other charges required by BUYER's lender(s) in connection with the BUYER's loan(s) which |
| 148 | BUYER is prohibited from paying by law or regulation. |
| 149 | (C) If SELLER agrees to pay any amount toward BUYER's closing costs and/or prepaids, SELLER shall |
| 150 | be obligated to pay **only those costs** marked in **paragraph 5(A)** and those specified in paragraphs |
| 151 | 5(B), 5(C) and 5(D) upon closing. This amount will include all VA/FHA non-allowables not specified to |
| 152 | be paid by SELLER. |
| 153 | (D) All mortgage payments, condominium or homeowners association fees and assessments, Community |
| 154 | Development District and government special assessments due and payable shall be paid current at |
| 155 | SELLER's expense at the time of closing. |
| 156 | (E) Public Body Special Assessments. At closing, SELLER will pay: (i) the full amount of liens imposed by |
| 157 | a public body ("public body" does not include a condominium or homeowners' association) that are |
| 158 | certified, confirmed and ratified before the date of closing; and (ii) the amount of the public body's |
| 159 | most recent estimate or assessment for an improvement which is substantially completed as of date |
| 160 | of acceptance of this Agreement but that has not resulted in a lien being imposed on the Property |
| 161 | before closing. BUYER will pay all other public body special assessments. |

         05/10 Letter

162        If public body special assessments may be paid in installments (CHECK ONE)

163           [ ] BUYER shall pay installments due after date of closing.

164           [√] SELLER will pay the assessment in full prior to or at the time of closing.

165        **IF NEITHER BOX IS CHECKED, THEN BUYER SHALL PAY INSTALLMENTS DUE AFTER DATE**

166        **OF CLOSING. This paragraph 6(E) shall not apply to liens imposed by a Community**

167        **Development District created by Florida Statutes 190. The special benefit tax assessment**

168        **imposed by a Community Development District shall be treated as an ad valorem tax.**

169      (F) FIRPTA Tax Withholding: If SELLER is a "foreign person" as defined by the Foreign Investment in

170          Real Property Tax Act, the parties shall comply with the Act.

171 7.   **DEFAULT:**

172      (A) If BUYER defaults under this Agreement, all binder deposit(s) paid and agreed to be paid (after

173          deduction of unpaid closing costs incurred except inspection fee(s), credit report and appraisal fees)

174          will be retained by SELLER as agreed upon liquidated damages, consideration for the execution of

175          this Agreement and in full settlement of any claims. BUYER and SELLER will then be relieved of all

176          obligations to each other under this Agreement except for BUYER's responsibility for damages

177          caused during inspections as described in paragraph 15.

178      (B) If SELLER defaults under this Agreement, BUYER may either: (i) seek specific performance; or (ii)

179          elect to receive the return of BUYER's binder deposit(s) without thereby waiving any action for

180          damages resulting from SELLER's default.

181      (C) Binder deposit(s) retained by SELLER as liquidated damages will be distributed pursuant to the terms

182          of the listing agreement or this Agreement.

183 8.   **NON-DEFAULT PAYMENT OF EXPENSES:**

184      (A) If BUYER fails to perform, but is not in default, all loan and sale processing and closing costs

185          incurred, whether the same were to be paid by BUYER or SELLER, will be the responsibility of

186          BUYER with costs deducted from the binder deposit(s) and the remainder of the binder deposit(s)

187          shall be returned to BUYER. This will include but not be limited to the transaction not closing because

188          BUYER does not obtain the required financing as provided in this Agreement or BUYER invokes

189          BUYER's right to terminate under any contingency in this Agreement; however if Buyer elects to

190          terminate this Agreement pursuant to paragraph 2(B), 2(C) or 2(D), each party will be responsible for

191          all loan and sale processing costs specified to be paid by that party.

192      (B) If SELLER fails to perform, but is not in default, all loan and sale processing and closing costs

193          incurred, whether the same were to be paid by BUYER or SELLER, will be the responsibility of

194          SELLER, and BUYER will be entitled to the return of the binder deposit(s). This will include the

195          transaction not closing because SELLER elects not to pay for the amount in excess of the amounts in

196          paragraphs 3, 6, and 15 (with respect to repairs, replacements and treatment), or because the zoning

197          is not as required in paragraph 13, or because SELLER cannot deliver marketable title (but shall not

198          include failure to appraise).

199 9.   **BINDER DISPUTE, WAIVER OF JURY TRIAL AND ATTORNEY FEES:**

200      (A) In the event of a dispute between BUYER and SELLER as to entitlement to the binder deposit(s), the

201          holder of the binder deposit(s) may file an interpleader action in accordance with applicable law to

202          determine entitlement to the binder deposit(s), and the interpleader's attorney's fees and costs shall

203          be deducted and paid from the binder deposit(s) and assessed against the non-prevailing party, or the

204          broker holding the binder deposit(s) may request the issuance of an escrow disbursement order from

205          the Florida Division of Real Estate. In either event, BUYER and SELLER agree to be bound thereby,

206          and shall indemnify and hold harmless the holder of the binder deposit(s) from all costs, attorney's

207          fees and damages upon disbursement in accordance therewith.

208      (B) All controversies and claims between BUYER, SELLER or Broker, directly or indirectly, arising out of

209          or relating to this Agreement or this transaction will be determined by non-jury trial. BUYER, SELLER

210          and Broker, jointly and severally, knowingly, voluntarily and intentionally waive any and all rights to a

211          trial by jury in any litigation, action or proceeding involving BUYER, SELLER or Broker, whether

212          arising directly or indirectly from this Agreement or this transaction or relating thereto. Each party will

213          be liable for their own costs and attorney's fees except for interpleader's attorney's fees and costs

214          which shall be payable as set forth in paragraph 9 (A).

215 10.  **TITLE EXAMINATION AND DATE OF CLOSING:**

216      (A) If title evidence and survey, as specified below, show SELLER is vested with marketable title,

217          including legal access, the transaction will be closed and the deed and other closing papers delivered

218          on or before [ ] _____ [√] ____45____ days after date of acceptance of this

219 Agreement, unless extended by other conditions of this Agreement. Marketable title means title which
220 a Florida title insurer will insure as marketable at its regular rates and subject only to matters to be
221 cured at closing and the usual exceptions such as survey, current taxes, zoning ordinances,
222 covenants, restrictions and easements of record. From the date of acceptance of this Agreement
223 through closing, SELLER will not take or allow any action to be taken that alters or changes the status
224 of title to the Property.

225 **(B)** Extension of Date of Closing
226 If closing cannot occur by the date of closing due to Truth In Lending Act (TILA) disclosure
227 requirements, the date of closing shall be extended for the period necessary to satisfy TILA disclosure
228 requirements, not to exceed seven (7) business days.

229 If extreme weather or other condition or event constituting acts of God causes (i) disruption of
230 services essential to the closing process or (ii) unavailability of hazard, flood or wind insurance prior to
231 closing, the date of closing will be extended for up to five (5) days after restoration of services
232 essential to the closing process and availability of applicable insurance. If (i) or (ii) continues for more
233 than thirty (30) days beyond the date of closing, BUYER or SELLER may terminate this Agreement by
234 delivering written notice to the other party.

235 If title evidence or survey reveals any defects which render the title unmarketable, BUYER or closing
236 agent will have five (5) days from receipt of title commitment and survey to notify SELLER of such title
237 defects. SELLER agrees to use reasonable diligence to cure such defects at SELLER's expense and
238 will have thirty (30) days to do so, in which event this transaction will be closed within ten (10) days
239 after delivery to BUYER of evidence that such defects have been cured but not sooner than the date
240 of closing. SELLER agrees to pay for and discharge all due and delinquent taxes, liens and other
241 monetary encumbrances, unless otherwise agreed. If SELLER is unable to convey to BUYER
242 marketable title, BUYER will have the right to terminate this Agreement or to accept such title as
243 SELLER may be able to convey, and to close this transaction upon the terms stated herein, which
244 election will be exercised within ten (10) days after BUYER's receipt of SELLER's written notice of
245 SELLER's inability to cure.

246 **11. TITLE EVIDENCE:** At least 5_____ days before date of closing (five (5) days if left blank), the party
247 paying for the title insurance shall cause the title agent to issue: [✓] Title insurance commitment for an
248 owner's policy in the amount of the purchase price [✓] Title insurance commitment for mortgage policy in
249 the amount of the new mortgage. Any expense of curing title defects such as but not limited to legal fees,
250 discharge of liens and recording fees will be paid by SELLER.

251 **12. SURVEY:** At least 5_____days before date of closing (five (5) days if left blank), the party paying for the
252 survey shall cause to be delivered to settlement agent: [✓] A new staked survey of the Property dated
253 within three (3) months of date of closing showing all improvements, certified to BUYER, lender, and the
254 title insurer in compliance with Florida law. [ ] A copy of a previously made survey of the Property
255 showing all existing improvements and sufficient to allow removal of the survey exceptions from the title
256 insurance commitment. [ ] No survey is required.
257 **If a surveyor's flood elevation certificate is required, BUYER shall pay for it.**

258 **13. ZONING AND RESTRICTIONS:** BUYER has ten (10) days from the date of acceptance of this Agreement
259 to verify that the Property can be legally used for Residential
260 (residential use if left blank). If the Property cannot be used for this purpose or if there is notice of
261 proposed zoning change or if there are restrictive covenants that prohibit such use, BUYER has the right
262 to terminate this Agreement upon written notice to SELLER within the ten (10) days or be deemed to have
263 waived the right to terminate under this paragraph. SELLER warrants and represents that there is ingress
264 and egress to and from the Property sufficient for its current use.

265 **14. PROPERTY DISCLOSURE:** SELLER does hereby represent that SELLER has legal authority and
266 capacity to convey the Property. SELLER represents that SELLER has no knowledge of facts materially
267 affecting the value of the Property other than those which BUYER can readily observe **except:**
268 _____.
269 SELLER further represents that the Property is not now and will not be prior to date of closing subject to a
270 municipal or county code enforcement proceeding and that no citation has been issued **except:**
271 _____.
272 If the Property is or becomes subject to such a proceeding prior to date of closing, SELLER shall comply
273 with Florida Statutes 125.69 and 162.06 notwithstanding anything contained within said Statutes,

05/10 Letter

274 SELLER shall be responsible for compliance with applicable code and all orders issued in such
275 proceeding unless otherwise agreed herein.) SELLER has received no written or verbal notice from any
276 governmental entity as to uncorrected building, environmental or safety code violations, and SELLER has
277 no knowledge of any repairs or improvements made to the Property not in compliance with governmental
278 regulations except: _____.

279 (A) **Energy Efficiency:** In accordance with Florida Statute 553.996, notice is hereby given that the BUYER
280 of real property with a building for occupancy located thereon may have the building's energy-efficiency
281 rating determined. BUYER acknowledges receipt of the Florida energy efficiency rating information
282 brochure prepared by the State of Florida at the time of or prior to BUYER signing this Agreement.

283 (B) **Radon Gas Disclosure:** Radon gas is a naturally occurring radioactive gas that, when it has
284 accumulated in a building in sufficient quantities, may present health risks to persons who are exposed
285 to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in
286 Florida. Additional information regarding radon testing may be obtained from your county health unit.

287 (C) **Flood Zone:** BUYER is advised to verify with the lender and appropriate government agencies
288 whether flood insurance is required and what restrictions apply to improving the Property and
289 rebuilding in the event of casualty.

290 (D) **Community Development District:** The Property may be in a Community Development District
291 (CDD).See BUYER'S Community Development District Acknowledgement for further information.

292 (E) **Mold Disclosure:** Mold is naturally occurring. The presence of mold in a home or building may cause
293 health problems and damage to the Property. If marked in paragraph 18, see attached Mold Inspection
294 Addendum.

295 (F) **Chinese/Defective Drywall:** The presence of Chinese/Defective Drywall in a home may cause health
296 problems and damage to the Property. If marked in paragraph 18, see attached Chinese/Defective
297 Drywall Addendum.

298 (G) **Airport Notice Zones:** If the Property is in Noise Zones A, B and/or an Airport Notice Zone, BUYER
299 and SELLER agree to comply with the City of Jacksonville Ordinance Code Section 656.1010.

300 (H) **Historic Districts:** BUYER is advised to verify with appropriate government agencies whether the
301 Property is in an historic district; if so, the Property may be subject to additional restrictions.

302 (I) **Other:** BUYER should exercise due diligence with respect to information regarding neighborhood
303 crimes, sexual offenders/predators and any other matters BUYER deems relevant to the purchase of
304 the Property

305 15. **MAINTENANCE, INSPECTION AND REPAIR:** SELLER will maintain the Property in its present condition
306 until closing, except for normal wear and tear and any repairs and/or replacements required by this
307 Agreement. BUYER and SELLER agree that the cost of inspections below or any other inspections
308 requested by BUYER are exempt from paragraph 8 of this Agreement and will be paid by BUYER
309 regardless of the outcome of this Agreement. If one or more of the inspections provided for in this
310 Agreement are not completed within the time required, BUYER waives the right to have those inspections.
311 If BUYER elects not to have any inspections performed, BUYER accepts the Property in its "AS IS"
312 condition on the date of acceptance of this Agreement. BUYER will be responsible for repair of all damages
313 to the Property resulting from inspections and BUYER will return the Property to its pre-inspection
314 condition.

315 **Access and Utilities:** SELLER will make the Property available for inspections during the time provided in
316 paragraph 15, and, if not, the time for inspections will be extended by the time access was denied. If
317 utilities are not active at the time the inspections or appraisal are to be made, SELLER will pay to have the
318 utilities activated for these purposes.

319 (A) **Inspections:** BUYER may, at BUYER's expense, have the Property inspected as described below by
320 appropriately licensed home inspectors or a person or entity who holds a Florida license to build, repair
321 or maintain the items inspected.

322 (B) Within ten (10) days after date of acceptance of this Agreement BUYER may have the Property
323 inspected to determine if:
324 (1) all major appliances; heating, cooling, mechanical, electrical, plumbing, well, and septic (including
325 drain field) systems, and pool equipment (if any) are in working condition, except _____
326 _____
327 (2) the main structure and the roof and pool (if any) are structurally sound and water tight; (3) the roof
328 on the main structure has a remaining economic life of two (2) years or any longer period required by
329 lender. "Working Condition" means operating in the manner in which the item was designed to operate.
330 The inspections are not intended to discover or note cosmetic conditions and SELLER is not obliged to

331       cure cosmetic conditions or to bring any item into compliance with current building codes unless
332       necessary to put an item in working condition. "Cosmetic Condition" means visible aesthetic
333       imperfections which do not affect the working condition of the item, such as, but not limited to, tears,
334       worn spots and discoloration of floor coverings, wallpapers, or window treatments, nail holes,
335       scratches, dents, scrapes, chips and caulking in bathrooms, ceilings, walls, flooring, tile, fixtures or
336       mirrors, and minor cracks in windows, driveways, sidewalks, pool decks, garage floors and patio floors.
337       Fogged windows are deemed not to be a cosmetic condition.

338       BUYER must, within fifteen (15) days after date of acceptance of this Agreement, deliver to SELLER
339       written notice of any items which are not in the condition required and a copy of the inspector's written
340       report. If BUYER fails to provide said written notice, BUYER waives the right to require SELLER to
341       make repairs or replacements except as required in 15(H).

342       (C) **Repairs and Replacements:** SELLER is obligated only to make repairs and replacements identified
343       in BUYER's written notice described in paragraph 15(B), and then only as is necessary to bring those
344       items to the condition required, unless otherwise set forth in this Agreement. SELLER's obligation to
345       pay for repairs and replacements is limited to the amount shown in paragraph 6(A) of this Agreement.
346       SELLER, within ten (10) days after receiving BUYER's written notice of requested repairs and
347       replacements and BUYER's loan approval, if applicable, will have repairs and replacements made in a
348       workmanlike manner by an appropriately licensed person. However, if such costs exceed the amount
349       specified in paragraph 6(A), SELLER must notify BUYER in writing within ten (10) days from receipt of
350       BUYER's written notice of requested repairs and replacements whether or not SELLER will pay the
351       excess costs for repairs and replacements. If SELLER has so notified BUYER that SELLER will pay the
352       excess, SELLER will have ten (10) days after such notification and loan approval to have repairs and
353       replacements made in a workman like manner by an appropriately licensed person. If SELLER declines
354       to pay the excess costs, BUYER may cancel this Agreement within five (5) days after receipt of
355       SELLER's written notice of SELLER's refusal to pay the excess costs by giving written notice to the
356       SELLER, or be deemed to have elected to proceed with this transaction, in which event BUYER will
357       receive credit at closing of an amount equal to the total of the SELLER's repair and replacement limit in
358       paragraph 6(A), if allowed by lender. If prohibited by lender, SELLER will accomplish the required
359       repairs and replacements and BUYER will pay the excess amount to SELLER at closing.

360       (D) **Repair and Replacement Inspection:** BUYER may, within three (3) days after receipt of SELLER's
361       written notice that repairs and replacements are complete, reinspect the Property solely to verify that
362       SELLER has made repairs and replacements required under this Agreement. No other repair or
363       replacement issues may be raised as a result of the reinspection unless the issue was not noticeable
364       during prior inspection(s).

365       (E) **Walk Through:** Prior to closing BUYER may walk through the Property solely to verify that SELLER
366       has maintained the Property in the condition required in this Agreement. No other issues may be raised
367       as a result of the walk through unless the issue was not visible during prior inspection(s).

368       (F) **Broker's Notice:** Neither the Listing Broker nor Selling Broker warrants the condition, size or square
369       footage of the Property and neither is liable to BUYER or SELLER in any manner whatsoever for any
370       claim, loss or damage regarding same. BUYER and SELLER hereby release and hold harmless said
371       Brokers and their licensees from any claim, loss or damage arising out of or occurring with respect to
372       the condition, size or square footage of the Property. Brokers shall not be liable for the performance by
373       any provider of services or products recommended by Brokers. Such recommendations are made as a
374       courtesy. BUYER and SELLER may select their own providers of services or products.

375       (G) **BUYER's Responsibility:** Repairs and replacements to the Property after date of closing or BUYER's
376       possession, whichever occurs first, will be BUYER's responsibility unless otherwise agreed in writing.

377       (H) **Wood-Destroying Organisms:** "Wood-Destroying Organisms (WDO)" means arthropod or plant life
378       required to be reported under the Florida Structural Pest Control Act (Florida Statutes 482). Within
379       fifteen (15) days after date of acceptance of this Agreement BUYER may have the Property inspected
380       by a Florida certified pest control firm and notify SELLER, in writing, as to whether there is any visible
381       active wood-destroying organism infestation or visible existing damage to the improvements from
382       wood-destroying organisms by furnishing a copy of such firm's written report to SELLER. If BUYER
383       fails to provide said written notice, BUYER waives the right to require SELLER to make any repairs,
384       replacements or treatments that would otherwise be required pursuant to this paragraph. SELLER will,
385       within ten (10) days after receiving the written WDO report and BUYER's loan approval, if applicable,
386       have repairs or replacements made in a workman-like manner by an appropriately licensed person.
387       SELLER will pay costs of treatment and repair by appropriately licensed persons of all wood destroying
388       organism report damage up to one percent (1.0%) of the purchase price. However, if such costs

389     exceed the amount agreed to be paid by SELLER, SELLER must notify BUYER in writing within ten
390     (10) days after receiving a copy of the WDO report stating whether or not SELLER will pay the excess
391     costs for treatment or repairs. If SELLER declines to pay the excess costs, BUYER will have the option
392     of terminating this Agreement within five (5) days after receipt of SELLER's written notice of SELLER's
393     refusal to pay the excess cost by giving written notice to SELLER, or be deemed to have elected to
394     proceed with this transaction, in which event SELLER will bear cost of one percent (1.0%) of the
395     purchase price or BUYER will receive credit of one percent (1.0%) of the purchase price, as allowed by
396     lender. SELLER is not obligated to treat the Property if there is evidence of previous infestation but no
397     visible live infestation and SELLER provides written proof to BUYER of previous treatment of the
398     Property for such infestation by a Florida certified pest control firm or transfers a current bond or
399     service agreement for such infestation to BUYER at closing. BUYER will pay for any reinspection fees
400     unless prohibited by law or regulation.

401 16.   **POSSESSION:** [   ] SELLER represents that there are no parties in possession other than SELLER.
402     BUYER will be given possession at closing unless otherwise specified as follows: _____
403     _____.
404     If possession is to be delivered before or after date of closing, the parties shall execute a separate
405     agreement prepared by legal counsel at possessor's expense

406     SELLER shall sweep the Property clean and remove all personal property not included in sale by time of
407     BUYER's possession.

408     [   ] BUYER understands that the Property is available for rent or rented and the tenant may continue in
409     possession following date of closing unless otherwise agreed in writing. Within five (5) days after date of
410     acceptance of this Agreement SELLER shall provide BUYER with a copy of all current leases for the
411     Property and deliver to BUYER originals of same at closing. At closing, all tenant deposits will be
412     transferred from SELLER to BUYER and any leases shall be deemed to have been assigned by SELLER
413     to BUYER and the obligations thereunder assumed by BUYER.

414 17.   **PERSONAL PROPERTY:** Included in the purchase price is all fixed equipment such as, but not limited to,
415     automatic garage door opener & controls, drapery hardware, attached lighting fixtures, mailbox, all ceiling
416     fans, fence, plants and shrubbery, all as now installed on the Property, and these additional items (to
417     which no value has been assigned) : stove, dishwasher, disposal, _____
418     _____
419     _____
420     _____
421     Items specifically excluded from this Agreement:
422     _____
423     _____

424 18.   **ADDENDA/RIDERS/DISCLOSURES:**
425     If marked the following are attached hereto and made a part of this Agreement:
426     [   ] Condominium Rider
427     [✓] Homeowners' Association/Community Disclosure
428     [   ] Lead-Based Paint Disclosure Form (for pre-1978 homes)
429     [   ] Coastal Construction Control Line Disclosure
430     [✓] Short Sale/Pre-Foreclosure Addendum
431     [✓] Mold Inspection Addendum
432     [   ] USDA Financing Addendum
433     [   ] For Your Protection: Get a Home Inspection (for FHA Financing)
434     [   ] Chinese/Defective Drywall Addendum
435     [✓] Other (Specify here) AS IS Addendum

436     **ADDITIONAL TERMS AND CONDITIONS:** CONTINGENT ON BUYER APPROVAL OF HOME INSPECT
437     RESULTS WITHIN 15 DAYS OF ACCEPTANCE BY LIEN HOLDER.
438
439     Trustee's Addendum    ~ 10/17/11
440     _____

389 exceed the amount agreed to by both parties, and SELLER must notify BUYER in writing within ten
390 (10) days after receiving a bid, if the SELLER elects to either whether or not SELLER will pay the excess
391 costs for treatment or repair. If the SELLER does not pay the excess costs, BUYER will have the option
392 of terminating this Agreement within ten days of receipt of SELLER's written notice of SELLER's
393 refusal to pay the excess cost by giving written notice to SELLER, or be deemed to have elected to
394 proceed with this transaction with the SELLER will bear cost of one percent (1.0%) of the
395 purchase price of BUYER will receive credit at closing of up to one percent (1.0%) of the purchase price, as allowed by
396 lender. SELLER is not obligated to treat the Property, if there is evidence of previous infestation but no
397 visible live infestation and SELLER provides written proof to BUYER of previous treatment of the
398 Property for such infestation if only Florida written pest control firm or transfers a current bond or
399 service agreement for such infestation to BUYER at closing. BUYER will pay for any reinspection fees
400 unless prohibited by law or regulation.

401 16 **POSSESSION.** [ ] SELLER represents that there are no parties in possession other than SELLER.
402 BUYER will be given possession at or before closing unless specified as follows: _____
403 _____
404 If possession is to be delivered before or after date of closing, the parties shall execute a separate
405 agreement prepared by legal counsel at possession, at no charge.

406 SELLER shall sweep the Property clean and remove all personal property not included in sale by time of
407 BUYER's possession.

408 [ ] BUYER understands that the property is presently leased or rented and the tenant may continue in
409 possession following date of closing, unless otherwise agreed to in writing. Within five (5) days after date of
410 acceptance of this Agreement, SELLER shall provide BUYER with a copy of all current leases for the
411 Property and the ver to BUYER of future of such undertaking. At closing, all tenant deposits will be
412 transferred from SELLER to BUYER and any leases will to be deemed to have been assigned by SELLER
413 to BUYER and the obligations therein assumed by BUYER.

414 17 **PERSONAL PROPERTY:** included is the purchase, all fixed equipment such as, but not limited to,
415 automatic garage door openers, controls applicable therefore, attached lighting fixtures, mailbox, all ceiling
416 fans, fence, plants and shrubbery as are now installed on the Property, and these additional items (to
417 which no value has been assigned: Stove, dishwasher, disposal: _____
418 _____
419 _____
420 _____
421 Items specifically excluded from this Agreement: _____
422 _____
423 _____

424 18 **ADDENDA/RIDERS/DISCLOSURES**
425 If marked the following are attached hereto and made a part of this Agreement:
426 [ ] Condominium Rider
427 [✓] Homeowners Association [  ] Disclosure
428 [ ] Lead-Based Paint (required if property built before 1978)
429 [ ] Coastal Construction Control Line Affidavit
430 [✓] Short Sale/Pre-Foreclosure Addendum
431 [✓] Mold Inspection Addendum
432 [ ] USDA Financing Addendum
433 [ ] For Your Protection: Get a Home Inspection (FHA financing)
434 [ ] Chinese/Defective Drywall Addendum
435 [✓] Other (Specify here): AS IS, plus sum

436 **ADDITIONAL TERMS AND CONDITIONS.** THIS SALE IS CONTINGENT ON BUYER APPROVAL OF HOME INSPECT
437 RESULTS WITHIN 15 DAY OF BUYER AND LENDER DISCLOSURE
438 _____
439 Trustee's Addendum    per   10/14/11
440 _____

441 _____

442 _____

443 _____

444 19.   **COMPLETE AGREEMENT AND MISCELLANEOUS PROVISIONS:** BUYER and SELLER acknowledge
445     receipt of a copy of this Agreement. Except for brokerage agreements, **all parties agree that the terms of**
446     this Agreement constitute the entire agreement between them and that they **have not received or relied on**
447     any representations by Brokers or any material regarding the Property including, but not limited to, listing
448     information, that are not expressed in this Agreement. **No prior or present agreements or**
449     **representations will bind BUYER, SELLER or Brokers unless incorporated into this Agreement.**
450     Modifications of this Agreement will not be binding unless in writing, **signed and delivered by the party to**
451     be bound. Signatures and initials to this Agreement and modifications **to this Agreement communicated by**
452     facsimile or electronically (including "PDF"), will be considered **as original provided the transmission**
453     includes a signed counterpart of the Agreement or modification with **physical signature of sending party.**
454     Headings are for reference only and shall not be deemed to control interpretations. If any provision of this
455     Agreement is or becomes invalid or unenforceable, all remaining provisions **will continue to be fully**
456     effective. Neither this Agreement nor any memorandum hereof will be recorded **in any public records.**

457     In the performance of the terms and conditions of this Agreement **each party will deal fairly and in good**
458     faith with the other. Notice to the Broker for a party shall be deemed notice to that party. All assignable
459     repair and treatment contracts and warranties are deemed assigned by **SELLER to BUYER at closing**
460     unless otherwise stated herein. SELLER agrees to sign all documents **necessary to accomplish same at**
461     BUYER's expense if any.

462     TIME IS OF THE ESSENCE IN THIS AGREEMENT. As used in this Agreement, **"days" means calendar**
463     days. Any time periods herein, other than the time of acceptance, which **end on a Saturday, Sunday, or**
464     State holiday shall extend to the next day which is not a Saturday, Sunday or State holiday. All references
465     to a date other than the date of acceptance shall be 7:00 p.m. Eastern **Time (ET).**

466     **If this Agreement is not understood, BUYER and SELLER should seek competent legal advice.**

467 20.   **BUYER'S AND SELLER'S NOTICES:** BUYER and SELLER represent that they have not entered into
468     any other agreements with real estate brokers other than those named below with regard to the Property.
469     BUYER and SELLER give the Brokers authorization to advise surrounding **neighbors who will be the new**
470     owner of the Property. "Broker", as used in this Agreement, is deemed to **include all of Broker's licensees**
471     licensed to sell real property in the State of Florida.

472 21.   **ESCROW DISCLOSURE:** BUYER and SELLER agree that Broker may place **escrow funds in an interest**
473     bearing account pursuant to the rules and regulations of the Florida **Real Estate Commission and retain**
474     any interest earned as the cost associated with maintenance of said escrow.

475 22.   **SOCIAL SECURITY OR TAX I.D. NUMBER:** BUYER and SELLER agree to **provide their respective**
476     Social Security or Tax I.D. number to closing attorney/ settlement agent **upon request.**

477 23.   **1031 EXCHANGE:** BUYER or SELLER may elect to effect a tax-deferred **exchange under Internal**
478     Revenue Service Code Section 1031(which shall not delay the closing), in **which event BUYER and**
479     SELLER agree to sign documents required to effect the exchange, provided **the non-exchanging party**
480     shall not incur any costs, fees or liability as a result of or in connection **with the exchange.**

481 24.   **PAYOFF AUTHORIZATION:** SELLER hereby authorizes the closing **attorney/settlement agent to obtain**
482     mortgage payoff letters (including from foreclosure attorneys) and **Homeowner's and Condominium**
483     Association status letters on behalf of SELLER.                          10|14|14     

484 25.   **TIME OF ACCEPTANCE:** IF THIS OFFER IS NOT SIGNED BY BUYER **AND SELLER AND DELIVERED**
485     TO BUYER AND SELLER OR THEIR RESPECTIVE BROKER **(INCLUDING BY FAX AND**
486     ELECTRONICALLY") ON OR BEFORE __6__:01 [ ] A.M. [✓] P.M.   ~~10/13/2017~~   (DATE), THIS
487     OFFER WILL TERMINATE. THE TIME FOR ACCEPTANCE OF ANY **COUNTER OFFER SHALL BE**
488     _____HOURS (FORTY EIGHT (48) HOURS IF LEFT BLANK) **FROM THE TIME THE**
489     COUNTER OFFER IS DELIVERED.

490 26.   **DATE OF ACCEPTANCE:** The date of acceptance of this Agreement **shall be the date on which this**
491     Agreement is last executed by BUYER and SELLER and the fact **of execution is communicated to the**
492     other party in writing.

493
494 BUYER _____ DATE _10-11-11_ SELLER _____ Title _10/14/14_ DATE

495
496 BUYER _____ DATE _10-11-11_ SELLER _____ DATE

497 Broker, by signature below, acknowledges receipt of $ _____ [ ] cash [ ] check as the
498 binder deposit specified in paragraph 1(A) of this Agreement. It will be deposited and held in escrow pending
499 disbursement according to the terms hereof, together with any additional binder deposit(s) escrowed by the
500 terms of this Agreement.

501 _____        _____        _____
502 Company                        By                             Title

## END OF PURCHASE AND SALE AGREEMENT

503 **Broker joins in this Agreement to evidence Broker's consent to be bound by the provisions of paragraph**
504 **9 above.**

505 7 Star Realty                               7 Star Realty
506 Firm Name of Listing Broker                 Firm Name of Selling Broker

507 904-425-8280                                904-425-8280
508 Phone for Listing Broker                    Phone for Selling Broker

509 By: _____          By: _____
510 Authorized Licensee Signature             Authorized Licensee Signature

511 Naji Hassan                                 Diana Ghannam
512 Printed Name of Licensee                    Printed Name of Licensee

513 904-673-8050                                904-425-8280
514 Phone for Listing Licensee                  Phone for Selling Licensee

**Note to Closing Attorney/Settlement** Agent (to be completed by Listing Broker): The total brokerage fee is
_____% of the purchase price or $_____.




# HOMEOWNERS' ASSOCIATION/COMMUNITY
# DISCLOSURE ADDENDUM

THIS ADDENDUM IS MADE BY THE UNDERSIGNED BUYER AND SELLER AND IS INCORPORATED INTO AND MADE A PART OF THE PURCHASE AND SALE AGREEMENT AND DEPOSIT RECEIPT BETWEEN BUYER AND SELLER (THE "AGREEMENT"). THIS ADDENDUM IS REFERENCED IN THE AGREEMENT AND PERTAINS TO THE FOLLOWING PROPERTY: 3542 Bay Island Circle
Jacksonville Beach, FL 32250

IF THE DISCLOSURE SUMMARY REQUIRED BY SECTION 720.401, FLORIDA STATUTES, HAS NOT BEEN PROVIDED TO THE PROSPECTIVE BUYER BEFORE EXECUTING THIS CONTRACT FOR SALE, THIS CONTRACT IS VOIDABLE BY BUYER BY DELIVERING TO SELLER OR SELLER'S AGENT OR REPRESENTATIVE WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 3 DAYS AFTER RECEIPT OF THE DISCLOSURE SUMMARY OR PRIOR TO CLOSING, WHICHEVER OCCURS FIRST. ANY PURPORTED WAIVER OF THIS VOIDABILITY RIGHT HAS NO EFFECT. BUYER'S RIGHT TO VOID THIS CONTRACT SHALL TERMINATE AT CLOSING.

DISCLOSURE SUMMARY FOR Ocean Cay
(NAME OF COMMUNITY)

1.   AS A PURCHASER OF PROPERTY IN THIS COMMUNITY, YOU WILL BE OBLIGATED TO BE A MEMBER OF A HOMEOWNER'S ASSOCIATION.

2.   THERE HAVE BEEN OR WILL BE RECORDED RESTRICTIVE COVENANTS GOVERNING THE USE AND OCCUPANCY OF PROPERTIES IN THIS COMMUNITY.

3.   YOU WILL BE OBLIGATED TO PAY ASSESSMENTS TO THE ASSOCIATION. ASSESSMENTS MAY BE SUBJECT TO PERIODIC CHANGE. IF APPLICABLE, THE CURRENT AMOUNT IS $ 600.00 PER annual YOU WILL ALSO BE OBLIGATED TO PAY SPECIAL ASSESSMENTS IMPOSED BY THE ASSOCIATION. SUCH ASSESSMENTS MAY BE SUBJECT TO CHANGE. IF APPLICABLE, THE CURRENT AMOUNT IS $ _____ PER _____.

4.   YOU MAY BE OBLIGATED TO PAY SPECIAL ASSESSMENTS TO THE RESPECTIVE MUNICIPALITY, COUNTY, OR SPECIAL DISTRICT. ALL ASSESSMENTS ARE SUBJECT TO PERIODIC CHANGE.

5.   YOUR FAILURE TO PAY SPECIAL ASSESSMENTS OR ASSESSMENTS LEVIED BY A MANDATORY HOMEOWNERS' ASSOCIATION COULD RESULT IN A LIEN ON YOUR PROPERTY.

6    THERE MAY BE AN OBLIGATION TO PAY RENT OR LAND USE FEES FOR RECREATIONAL OR OTHER COMMONLY USED FACILITIES AS AN OBLIGATION OF MEMBERSHIP IN THE HOMEOWNERS' ASSOCIATION. IF APPLICABLE, THE CURRENT AMOUNT IS $ _____ PER _____.

7.   THE DEVELOPER MAY HAVE A RIGHT TO AMEND THE RESTRICTIVE COVENANTS WITHOUT THE APPROVAL OF THE ASSOCIATION MEMBERSHIP OR THE APPROVAL OF THE PARCEL OWNERS.

8.   THE STATEMENTS CONTAINED IN THIS DISCLOSURE FORM ARE ONLY SUMMARY IN NATURE, AND, AS A PROSPECTIVE PURCHASER, YOU SHOULD REFER TO THE COVENANTS AND THE ASSOCIATION GOVERNING DOCUMENTS BEFORE PURCHASING PROPERTY.

9.   THESE DOCUMENTS ARE EITHER MATTERS OF PUBLIC RECORD AND CAN BE OBTAINED FROM THE RECORD OFFICE IN THE COUNTY WHERE THE PROPERTY IS LOCATED, OR ARE NOT RECORDED AND CAN BE OBTAINED FROM THE DEVELOPER.

BUYERS BY THEIR SIGNATURE BELOW ACKNOWLEDGE RECEIPT OF THIS SUMMARY BEFORE SIGNING A PURCHASE AND SALE AGREEMENT.

BUYER _____    DATE 10ᶜʰ 10ᶜʰ 11

BUYER _____    DATE 10-11-11

SELLER _____    DATE 10/17/11

SELLER _____    DATE _____

HADA                                                                                    05/10



# SHORT SALE/PRE-FORECLOSURE **ADDENDUM**

COPYRIGHTED BY AND SUGGESTED FOR USE BY THE **MEMBERS OF THE**
NORTHEAST FLORIDA ASSOCIATION OF REALTORS®, **INC.**



This Addendum is made by the undersigned BUYER and SELLER and is incorporated into and made a part of the Purchase and Sale Agreement and Deposit Receipt between BUYER and SELLER (the "Agreement"). Where this Addendum is in conflict with the terms of the Agreement, the terms contained in this Addendum will govern. This Addendum is referenced in the Agreement and pertains to the following Property:

3542 Bay Island Circle, Jacksonville Beach, FL 32250

1.  SELLER represents that the purchase price may be less than the amounts owed to holders of outstanding mortgages and other liens affecting the Property ("encumbrance holders"). SELLER's obligation to close the sale of the Property is contingent on the agreement of SELLER's encumbrance holders and/or court consent to:

(a) accept a payoff which is less than the balance due under the encumbrances;

(b) accept the HUD-1 settlement statement; and

(c) furnish a recordable satisfaction or release of the encumbrances.

**NOTICE: IN A SHORT SALE TRANSACTION, SELLER MAY HAVE A CONTINUING FINANCIAL OBLIGATION TO SELLER'S ENCUMBRANCE HOLDERS AFTER CLOSING. SELLER IS ADVISED TO SEEK COMPETENT LEGAL AND FINANCIAL ADVICE CONCERNING SELLER'S LEGAL, TAX AND FINANCIAL OBLIGATIONS.**

2.  SELLER shall within five (5) days from the date of the Agreement initiate the process to have this short sale approved by all encumbrance holders and request in writing a delay of the foreclosure sale date if the foreclosure sale date is scheduled to take place before the date of closing. SELLER shall provide all information and documentation required by the encumbrance holders within five (5) days after receiving the request(s).

3.  If this short sale or the request for delay of the foreclosure sale date is not approved by all encumbrance holders within _____60_____ days (sixty (60) days if left blank) from the date of the Agreement ("Approval Deadline"), either BUYER or SELLER may terminate the Agreement by giving written notice to the other. BUYER and SELLER agree to cooperate in good faith without delay to achieve approval.

4.  SELLER hereby authorizes the encumbrance holders to provide BUYER, Brokers to this transaction and closing attorney/settlement agent with the current status of SELLER's application for short sale and/or request for a delay of the foreclosure sale date, and of the approval or denial of either. Note: The fact that this short sale may be considered or approved by encumbrance holders does not automatically mean that the foreclosure process has been suspended or delayed.

# SHORT SALE/PRE-FORECLOSURE ADDENDUM continued

5. BUYER acknowledges that SELLER's encumbrance holders are **not parties to the Agreement** and are not obligated to consider or approve the Agreement within any specified time period. The date of acceptance of the Agreement shall be the date on which the Agreement is last executed by BUYER and SELLER and the fact of execution is communicated to the other party in writing (**not the date of encumbrance holders' approval**). BUYER further acknowledges that SELLER and Broker are not liable for encumbrance holders' delays, failure to approve this short sale or failure to complete this short sale after approving the Agreement.

6. Notwithstanding paragraph 8(b) of the Agreement, if this transaction **does not close because the** encumbrance holders do not approve this short sale, SELLER is not responsible for BUYER's loan and sale processing and closing costs incurred.

7. Time Periods: (Check one)

(a) [ ✓ ] Except for Approval Deadline, all time periods for inspections, contingencies, loan application and loan approval shall begin from the date SELLER delivers written notice to BUYER that this short sale has been approved by the encumbrance holders. **The date of closing shall be on or before** __45__ **days (forty-five (45) days if left blank) after approval by the encumbrance holders unless extended by other conditions of the Agreement.**

(b) [ ] All time periods under the Agreement shall begin from the date of acceptance of the Agreement by BUYER and SELLER.

If neither box 7(a) nor 7(b) is marked, then 7(a) shall automatically apply.

~~8. Unless otherwise agreed to by BUYER and SELLER, in writing, SELLER may continue to market the Property for sale. If SELLER receives a subsequent written offer(s) to purchase the Property which SELLER intends to accept, before or in acceptance, notice to SELLER BUYER within 24 hours after receipt of such other written offer(s), the Notice; BUYER will have five (5) days after delivery of the Notice to terminate the Agreement. If BUYER elects to terminate the Agreement, BUYER must notify SELLER of BUYER's election in writing within the five (5) day period. If the Agreement is not so terminated, BUYER understands that SELLER may so SELLER's option, submit this subsequent offer(s) to accumulate buyer holders this sale solely in addition to the Agreement.~~



_____    __10-11-11__
BUYER                             DATE

_____    __10-11-11__
BUYER                             DATE

_____    __10/14/11__
SELLER                            DATE

_____    _____
SELLER                            DATE

SSPA                    Page 2 of 2                    05/10



# MOLD INSPECTION ADDENDUM

COPYRIGHTED BY AND SUGGESTED FOR USE BY THE **MEMBERS**
OF THE NORTHEAST FLORIDA ASSOCIATION OF REALTORS®, INC.



This Addendum is made by the undersigned BUYER and SELLER and is incorporated into and made a part of the Purchase and Sale Agreement and Deposit Receipt between BUYER and SELLER (the "Agreement"). This Addendum is referenced in the Agreement and pertains to the following Property:
3542 Bay Island Drive, Jacksonville Beach, FL 32250

1. BUYER, at BUYER'S expense, may have an appropriately licensed inspector conduct an inspection of the Property for mold within (fifteen 15 days) after date of acceptance of the Agreement ("Mold Inspection Period").

2. BUYER shall be responsible for prompt payment for such mold inspection and repair of damage to and restoration of the Property resulting from such inspection.

3. If the mold inspection reveals the presence of mold in the Property which requires professional removal or remediation, BUYER may terminate the Agreement by delivering written notice to SELLER of such election within the Mold Inspection Period. If BUYER timely terminates the Agreement, the deposit shall be immediately returned to BUYER and BUYER and SELLER shall be released from further obligations under the Agreement, except as provided in paragraph 2 herein and in the Agreement.

4. If BUYER fails to conduct the mold inspection permitted in this Mold Inspection Addendum or, after having conducted such inspection, fails to timely notify the SELLER of BUYER'S intent to terminate the Agreement, or if the mold inspection does not reveal the presence of mold in the Property which requires professional removal or remediation, BUYER may not terminate the Agreement pursuant to this Mold Inspection Addendum.

5. This Addendum does not obligate SELLER to incur any expense for mold removal or remediation.

_____     _____
BUYER                                                                    DATE       *10-11-11*

_____     _____
BUYER                                                                    DATE       *10-11-11*

_____     _____
SELLER                                                                   DATE       *10/14/4*

_____     _____
SELLER                                                                   DATE

MIA                                                                                           05/10

## As-Is Addendum to the Purchase and Sale **Agreement**

This Addendum is to the Purchase and Sale Agreement entered into **between:**

("SELLER") _Gordon P. Jones as Bankruptcy Trustee of the estate of Valerie H. Shaw_

and ("BUYER") _____ Austin ; husband and wife _____

relating to the following described real property ("PROPERTY"):

____ 3542 Bay Island Circle, Jacksonville Beach, FL 32250 _____

If BUYER determines, in BUYER'S sole discretion, that the PROPERTY is not acceptable to BUYER for any reason, BUYER may terminate this Contract by delivering written notice to SELLER within 5 days from the inspection period.

BUYER acknowledges and accepts the foregoing described PROPERTY in an "AS IS" condition from the SELLER at closing, including any unknown hidden defects. SELLER is legally obligated to disclose known defects. Additionally, the BUYER acknowledges that the SELLER, 7 Star Realty Inc, The Cooperating Broker (if any), or any or their Sales Associates shall not be responsible for the repair, replacement, or modification of any deficiencies, malfunctions, or mechanical defects in the material, workmanship, and mechanical components of the dwelling, appurtenant structures, and improvements of the subject PROPERTY prior to subsequent to closing. All clauses in the contracts pertaining to PROPERTY condition, or compliance with city, state, or county regulations are hereby deleted from the contract. Paragraphs 15C and 15H of the Purchase and Sales Contract do not remain in effect. SELLER shall only be required to deliver the PROPERTY in substantially the same physical condition as of the date of the contract ratification, and SELLER shall have no obligation to make repairs to the electrical, plumbing, heating & air conditioning or any other mechanical system, equipment, or fixture. The purchase price reflects that the PROPERTY may require work and expense. "Lender's requirements" shall be complied with by the BUYER.

_____ _10-11-11_    _____ _10-11-11_
(Seller's Signature)        (Date)         (Buyer's Signature)        (Date)
Buyer

_____ _10/14/14_    _____ _____
(Seller's Signature)        (Date)         (Buyer's Signature)        (Date)

### TRUSTEE'S ADDENDUM TO CONTRACT FOR SALE AND PURCHASE BETWEEN AND GORDON P. JONES AS BANKRUPTCY TRUSTEE OF THE ESTATE OF VALERIE H. SHAW AND ██████████ AUSTIN

1. This addendum supersedes any provision contained in the Contract for Sale and Purchase to the extent it conflicts with any term or condition.

2. This sale is contingent upon the following:

    (a) Seller (Trustee) filing a notice of intention to sell the property in the bankruptcy proceeding now pending for the debtor in the Middle District of Florida for **VALERIE H. SHAW**, Case Number 10-07287-3G7; and
    (b) No objection to the sale being filed; or
    (c) If objection to sale filed, a final Order Overruling the said objection; and
    (d) No order preventing the sale being filed by the Bankruptcy Court.

3. The Seller, (Trustee) at his sole option, has the right to terminate this agreement in the event that the bankruptcy estate does not receive ten percent (10%) of the purchase price free and clear of any liens or encumbrances after subtracting all closing costs, real estate commissions, expenses, mortgages, liens or any claims against the proceeds.

4. The Trustee will waive any claims against the lien holder or encumbrance holder regarding the enforceability of their note and mortgage.

5. This sale is of the Estate's right, title and interest only. The Estate's interest is derived from the debtor's interest on the date of filing of Chapter 7 pursuant to 11 U.S.C. §541. Property will be conveyed at closing by Trustee's Deed only.

6. Trustee can only execute owner's affidavit regarding facts of which he has personal knowledge.

_/2 /4 / /_

Buyer, C██████████, Austin

_149- 66 - 5191_

Social Security or Tax I.D

_10 -14- 11_

Date

Buyer, ██████ Austin

Social Security

Date

Seller, Gordon P. Jones, as Trustee
of the Bankruptcy Estate of
Valerie H. Shaw

_10 - 14 - 11_

Date

Label Matrix for local noticing
113A-3
Case 3:10-bk-07287-PMG
Middle District of Florida
Jacksonville
Fri Oct 21 13:44:29 EDT 2011

BAC Home Loans Servicing, LP
P.O. Box 25018
Tampa, FL 33622-5018

Patricia R. Boney
3715 San Viscaya Dr.
Jacksonville, FL 32217-4233

Jacob A. Brown
50 North Laura St., Ste 2500
Jacksonville, FL 32202-3646

Florida Dept of Labor and Security
Hartman Building, Suite 307
2012 Capital Circle, Southeast
Tallahassee, FL 32399-6583

Florida Dept of Revenue
P.O. Box 6668
Tallahassee, FL 32314-6668

Naji Hassan
7 Star Realty
9951 Atlantic Blvd
Suite 130
Jacksonville, Fl 32225-6542

IRS
Centralized Insolvency Operations
P.O. Box 7346
Philadelphia, PA 19101-7346

Valerie H. Shaw
3542 Bay Island Circle
Jacksonville Beach, FL 32250-3954

Dyck-ONeal, Inc.
PO Box 13370
Arlington, TX 76094-0370

A T & T Mobility
PO Box 772349
Ocala, FL 34477-2349

American Express
POB 981531
El Paso, TX 79998-1531

American Express Centurion Bank
c o Becket and Lee LLP
POB 3001
Malvern, PA 19355-0701

American Infosource Lp As Agent for Wfnnb
PO Box 248872
Oklahoma City, OK 73124-8872

Banana Republic
POB 981064
El Paso, TX 79998-1064

Bank of America
PO Box 5170
Simi Valley, CA 93062-5170

Bank of America
POB 15026
Wilmington, DE 19850-5026

Bureau of Coll. Recovery
7575 Corporate Way
Eden Prairie, MN 55344-2000

Capital One
POB 30285
Salt Lake City, UT 84130-0285

Capital One Bank (USA), N.A.
by American Infosource Lp As Agent
PO Box 248839
Oklahoma City, OK 73124-8839

Capital Recovery IV LLC
c/o Recovery Management Systems Corporat
25 SE 2nd Avenue Suite 1120
Miami FL 33131-1605

(c)CAVALRY PORTFOLIO SERVICES
7 SKYLINE DR STE 350
HAWTHORNE NY 10532-2162

Cavalry Portfolio Services, LLC
500 Summit Lake Drive Suite 400
Valhalla, NY 10595-2322

Collectcorp
P.O. Box 101928
Birmingham, AL 35210-6928

Continental Group
6620 Southpoint Dr S
Suite 610
Jacksonville, FL 32216-0912

Countrywide Home Loans
7105 Corporate Drive
Plano, TX 75024-4100

Dillard's
POB 103104
Roswell, GA 30076-9104

FMA Alliance, Ltd
11811 N Freeway, Ste 900
Houston, TX 77060-3292

Fia Card Services, NA/Bank of America
by American Infosource Lp As Its Agent
PO Box 248809
Oklahoma City, OK 73124-8809

Financial Asset Mgt Sys
POB 451409
Atlanta, GA 31145-9409

Florida Default Law Group
9119 Corporate Lake Drive
Tampa, FL 33634-2362

GE Money Bank
POB 981064
El Paso, TX 79998-1064

GE Money Bank
POB 981438
El Paso, TX 79998-1438

GE Money Bank
c/o Recovery Management Systems Corporat
25 SE 2nd Ave Suite 1120
Miami FL 33131-1605

Greg Martin
760 S Brevard Ave
Cocoa Beach, FL 32931-4446

Health America CU
9790 Touchton Road
Jacksonville, FL 32246-8227

I.C. System, Inc.
POB 64437
Saint Paul, MN 55164-0437

IC System, Inc.
PO Box 64887
Saint Paul, MN 55164-0887

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346

Kass, Shuler, Solomon
PO Box 800
Tampa, FL 33601-0800

Leading Edge Recovery
PO Box 129
Linden, MI 48451-0129

Lowe's
PO Box 981064
El Paso, TX 79998-1064

McCall
POB 600730
Jacksonville, FL 32260-0730

NCO Financial
PO Box 15760
Wilmington, DE 19850-5760

NCO Financial Systems
4740 Baxter Rd.
Virginia Beach, VA 23462-4484

National Action Fin Svcs
PO Box 9027
Williamsville, NY 14231-9027

National City Mortgage
PO Box 5570
Cleveland, OH 44101-0570

Nationwide Credit Inc
2015 Vaughn Road NW Ste 400
Kennesaw, GA 30144-7802

Ocean Cay HOA
c/o Hathaway & Reynolds
115 Professional Dr Ste 101
Ponte Vedra Beach, FL 32082-6201

Portfolio Recovery Assoc.
PO Box 4115
Concord, CA 94524-4115

(p)PORTFOLIO RECOVERY ASSOCIATES LLC
PO BOX 41067
NORFOLK VA 23541-1067

Redline Recovery
11675 Rainwater Drive
STE 350
Alpharetta, GA 30009-8693

Regional Adjustment Bureau
PO Box 1022
Wixom, MI 48393-1022

Rolfe & Lobello, P.A.
PO Box 40546
Jacksonville, FL 32203-0546

Roundup Funding, LLC
MS 550
PO Box 91121
Seattle, WA 98111-9221

Southwest Credit
4120 International Pkwy
Suite 1100
Carrollton, TX 75007-1958

Sunrise Credit Services
260 Airport Plaza
POB 9100
Farmingdale, NY 11735-9100

Tax Collector, Duval County
231 E. Forsyth Street, #130
Jacksonville, FL 32202-3380

Vengroff, Williams & Assoc
PO Box 4155
Sarasota, FL 34230-4155

WFNNB/Loft
POB 182125
Columbus, OH 43218-2125

```
(p)CHASE CARD SERVICES              Zwicker & Associates              Gordon P. Jones +
201 NORTH WALNUT STREET             80 Minuteman Road                 P O Box 600459
ATTN MARK PASCALE                   Andover, MA 01810-1008            Jacksonville, FL 32260-0459
MAIL STOP DE1-1406
WILMINGTON DE 19801-2920


Jacob A Brown +                     Edward P Jackson +                United States Trustee - JAX 7 +
Akerman Senterfitt                  255 N. Liberty Street, First Floor 135 W Central Blvd Suite 620
50 North Laura Street               Jacksonville, FL 32202-2820       Orlando, FL 32801-2440
Suite 3100
Jacksonville, FL 32202-3659


Dyck-O'Neal, Inc +                  Teresa M. Hair +                  (TM) Office Of Edward P Jackson +
P O Box 13370                       Florida Default Law Group, PL     255 N. Liberty Street, First Floor
Arlington, TX 76094-0370            PO  Box 25018                     Jacksonville, FL 32202-2820
                                    Tampa, FL 33622-5018
```

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

```
Internal Revenue Service            Portfolio Recovery Associates, LLC    Washington Mutual
Centralized Insolvency Ops          POB 41067                             POB 660433
PO Box 21126                        Norfolk VA 23541                      Dallas, TX 75266
Philadelphia, PA 19114-0326
```

Addresses marked (c) above for the following entity/entities were corrected
as required by the USPS Locatable Address Conversion System (LACS).

```
Cavalry Portfolio Services
7 Skyline Drive
3rd Floor
Hawthorne, NY 10532
```

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

```
(u)Paul M. Glenn                    (d)Gordon P. Jones +              End of Label Matrix
Jacksonville                        P.O. Box 600459                  Mailable recipients    68
                                    Jacksonville, FL 32260-0459      Bypassed recipients     2
                                                                     Total                  70
```